UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DENNIS MCDANIEL,

                    Petitioner,

        v.

JASON BENNETT,

                    Respondent.

CASE NO. 3:22-CV-5753-BHS-DWC

REPORT AND RECOMMENDATION

Noting Date: May 26, 2023

The District Court has referred this action to Chief United States Magistrate Judge David W. Christel. Petitioner Dennis McDaniel filed his federal habeas Petition ("Petition"), pursuant to 28 U.S.C. § 2254, seeking relief from his state court convictions and sentence. *See* Dkt. 5. The Court concludes Petitioner failed to properly exhaust his state court remedies as to all grounds raised in the Petition. Because Petitioner is barred from pursuing state court remedies, Petitioner has procedurally defaulted on the grounds raised in the Petition. Therefore, the undersigned recommends the Petition be denied and a certificate of appealability not be issued.

# I.  Background

A.  <u>Factual Background</u>

On February 2, 2011, in the Pierce County Superior Court ("trial court"), a jury found Petitioner guilty of one count of child molestation in the first degree. Dkt. 11-1, Ex. 1; *see also* Dkt. 11-1, Ex. 2. The Court of Appeals of the State of Washington ("state court of appeals") summarized the facts of Petitioner's case as follows:

FACTS

I. DISCLOSURES BY THE VICTIM

C.D. lived half the time with her mother and half with her paternal grandmother. Her mother would frequently bring C.D. to Teresa Russell's house, where C.D. would often stay the night. McDaniel lived with Russell.

In early 2008, her mother picked up C.D., who was then three years old, from an overnight stay at Russell's home. C.D. told her mother that McDaniel had put hand sanitizer on his hands and "touched her private." Report of Proceedings (RP) at 143. Shortly thereafter, C.D.'s mother told McDaniel about this disclosure and informed him that she was going to call the police. Her mother did not contact the police right away, however, because she felt this was a serious allegation. McDaniel was shocked at the claim and denied the alleged contact. C.D. did not see McDaniel again.

In June 2009, C.D. repeated the disclosure to her mother, again that McDaniel had put hand sanitizer on his hands and touched "her private." RP at 145. Her mother called the police. At about the same time, C.D. made the same disclosure to her grandmother, her half sister S.D., and S.D.'s Big Sister mentor, Elizabeth Wendell. The grandmother and Wendell immediately contacted Child Protective Services (CPS).

In July 2009, Rebecca Wiester, an attending physician at Harborview Sexual Assault Center, interviewed C.D. C.D. told Dr. Wiester that McDaniel had had "got on" her "private." RP at 634. That summer, C.D. also told therapist, Cassandra Ellsworth at Kent Youth and Family Services, that McDaniel had touched her "privates" three times and pointed to her vagina. RP at 526, 533. C.D. was also interviewed by Cornelia Thomas, a forensic child interviewer at the Children's Advocacy Center in Kent.

1

## II. PROCEDURE

2          On December 30, 2009, the State arraigned McDaniel on a charge of one
count of first degree child rape. On June 15, 2010, the State amended the
3    information, charging McDaniel also with first degree child molestation.

4                                        * * *

5          On January 25, it came to light that the State had never re-arraigned
McDaniel on the child molestation charge that had been added to the information
6    on June 15, 2010. The court arraigned McDaniel on the molestation charge on
January 25, and McDaniel pleaded not guilty. Based on the wishes of his client,
7    McDaniel's counsel objected to the re-arraignment as untimely. Counsel also told
the court that he had received a copy of the amended information the previous
8    June, that he had made his client aware of the amended charges that month, and
that he was well aware the State was proceeding on both counts.

9
          On January 31, in conjunction with resting its case, the State filed a
10   second amended information, striking the phrase "not in a state-registered
domestic partnership with the defendant," because that element had been added to
11   the statute after the time period for McDaniel's charges. Clerk's Papers (CP) at
109–10. McDaniel agreed to the second amended information, and the court re-
12   arraigned him.

13         The jury found McDaniel not guilty of first degree child rape and guilty of
first degree child molestation. The court sentenced McDaniel to 160 months to
14   life in prison.

15   Dkt. 11-1, Ex. 3, *State v. McDaniel*, No. 41885-1-II (2019), at 29–31 (footnotes omitted).

16         B.  Procedural Background

17              1.  *Direct Appeal*

18   Petitioner challenged his conviction and sentence on direct appeal. *See* Dkt. 11-1, Exs. 4–

19   8. The state court of appeals affirmed Petitioner's convictions. Dkt. 11-1, Ex. 3. Petitioner sought

20   discretionary review by the Washington State Supreme Court ("state supreme court"). Dkt. 11-1,

21   Ex. 9. On November 6, 2013, the state supreme court denied Petitioner's petition for review

22   without comment. Dkt. 11-1, Ex. 10. The state court of appeals issued its mandate on November

23   20, 2013. Dkt. 11-1, Ex. 11.

24

2. *Personal Restraint Petitions*

In July 2014, Petitioner filed a post-conviction motion in the trial court, challenging his conviction, which transferred the motion to the state court of appeals for consideration as a personal restraint petition ("PRP") seeking state post-conviction relief. Dkt. 11-1, Ex. 12; *see also* Dkt. 11-1, Exs. 13–14. The state court of appeals dismissed the PRP on August 19, 2015. Dkt. 11-1, Ex. 15. Petitioner did not seek discretionary review by the state supreme court, and the certificate of finality was issued by the state court of appeals on December 28, 2015. Dkt. 11-1, Ex. 16.

In March 2016, Petitioner filed another PRP in the state court of appeals. Dkt. 11-1, Ex. 17; *see also* Dkt. 11-1, Exs. 18–19. The state court of appeals dismissed the petition as untimely under Washington law, RCW 10.73.090(1). *See* Dkt. 11-1, Ex. 20. Petitioner sought discretionary review by the state supreme court, which was denied by the deputy commissioner of the state supreme court on May 24, 2017. *See* Dkt. 11-1, Exs. 21, 22. Petitioner moved to modify the deputy commissioner's decision. Dkt. 11-1, Ex. 23. The state supreme court denied the motion to modify without comment and the state court of appeals issued the certificate of finality on December 5, 2017. Dkt. 11-1, Exs. 24, 25.

In January 2019, Petitioner filed another post-conviction motion in the trial court, which again transferred the matter to the state court of appeals for consideration as a PRP. Dkt. 11-1, Ex. 26; *see also* Dkt. 11-1, Ex. 27. The state court of appeals dismissed the PRP as untimely. Dkt. 11-1, Ex. 28. Petitioner did not seek discretionary by the state supreme court, and the state court of appeals issued the certificate of appealability on May 17, 2019. Dkt. 11-1, Ex. 29.

In 2021, Petitioner filed additional post-conviction motions in the trial court challenging his conviction. Dkt. 11-1, Exs. 30; Dkt. 11-2, Exs. 31, 32. The state court transferred the motions

to the state court of appeals for consideration as PRPs. Dkt. 11-2, Exs. 33, 34. In addition, Petitioner filed an amended PRP in September 2021, seeking sentencing relief based on the holding in *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (Wash. 2021). Dkt. 11-2, Ex. 35, at 84–140; *see also* Dkt. 11-2, Exs. 36, 37. After consolidating the petitions and dismissing as moot Petitioner's September 2021 amended PRP because the trial court had corrected Petitioner's sentence pursuant to *Blake* on October 18, 2021, the state court of appeals dismissed the remaining portions of the consolidated matter as untimely under Washington law, RCW 10.73.090(1). Dkt. 11-2, Ex. 38, at 260–62. Petitioner sought discretionary review by the state supreme court, which was denied by the deputy commissioner of the state supreme court on March 28, 2022. Dkt. 11-2, Exs. 39, 40. Petitioner moved to modify the deputy commissioner's decision. Dkt. 11-2, Ex. 41. The state supreme court denied the motion to modify without comment and the state court of appeals issued the certificate of finality on August 16, 2022. Dkt. 11-2, Exs. 42, 43.

3. *Federal Court Procedural History*

In April 2014, Petitioner filed a federal habeas petition, challenging his conviction under the original judgment and sentence. Dkt. 11-2, Ex. 44. The Court denied the claims in the petition on the merits and dismissed it with prejudice. Dkt. 11-2, Exs. 45–47. After the Court denied the 2014 petition, the state trial court resentenced Petitioner pursuant to the state supreme court's decision in *Blake*, 481 P.3d 521. Dkt. 11-1, Ex. 2. On October 18, 2021, the trial court entered an amended judgment and sentence, reducing the duration of Petitioner's sentence. Dkt. 11-1, Ex. 2.

1   On October 6, 2022, Petitioner filed the instant Petition raising three grounds for relief.[1]

2   Dkts. 1, 5. On December 8, 2022, Respondent filed, and served on Petitioner, an Answer. Dkt.

3   10. In the Answer, Respondent asserts Petitioner failed to exhaust all three grounds and these

4   grounds are now barred from federal review. *Id*. Petitioner filed a Traverse on February 2, 2023.

5   Dkt. 15.

6   On March 24, 2023, the Court issued an Order directing the parties to address whether

7   Petitioner had state remedies available to him at the time he filed the instant Petition.[2] Dkt. 16.

8   The parties have filed supplemental briefs (*see* Dkts. 17, 18) and, thus, the Petition is ripe for

9   consideration.

10  **II.  Discussion**

11  Respondent maintains Petitioner failed to exhaust all grounds raised in the Petition and is

12  procedurally barred from federal review of these grounds. Dkt. 10.

13  A.  Exhaustion

14  "[A] state prisoner must normally exhaust available state judicial remedies before a

15  federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275

16  (1971). Petitioner's claims will be considered exhausted only after "the state courts [have been

17  afforded] a meaningful opportunity to consider allegations of legal error without interference

---

[1] The instant federal petition is not a second or successive petition for purposes of 28 U.S.C. § 2244(b) because the trial court entered its amended judgment and sentence on October 18, 2021, after this Court dismissed the first federal habeas petition. *See Magwood v. Patterson*, 561 U.S. 320 (2010); *Turner v. Baker*, 912 F.3d 1236 (9th Cir. 2019).

[2] In its Order on this issue, the Court directed that the supplement briefing include information on when Petitioner's October 18, 2021 sentence became final for purposes of state law, and how *Brown v. Maass*, 11 F.3d 914, 915 (9th Cir. 1993) should impact the Court's analysis of whether Petitioner had state court remedies available to him when he filed his federal Petition. *See* Dkt. 16. Because the Court finds Petitioner's October 18, 2021 resentencing does not restart the clock on the state time bar under Washington law and, therefore, Petitioner did not have a state remedy available to him at the time he filed his federal Petition, *see infra* at II.B, the Court need not address the *Brown* decision herein.

from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state supreme court even though the state court did not reach the argument on the merits). It is not enough if all the facts necessary to support the federal claim were before the state courts or if a somewhat similar state law claim was made. *Duncan*, 513 U.S. at 365-66 (citing *Picard*, 404 U.S. at 275; *Anderson v. Harless*, 459 U.S. 4 (1982)). Petitioner must include reference to a specific federal constitutional guarantee, as well as a statement of the facts entitling Petitioner to relief. *Gray v. Netherland*, 518 U.S. 152, 162-163 (1996); *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005). Petitioner bears the burden of proving he has exhausted available state remedies, and retains the burden to prove all facts relevant to the exhaustion requirement. *See Rose v. Lundy*, 455 U.S. 509, 520 (1982); 28 U.S.C. § 2254(b)(1)(A).

   *1.   Grounds Raised in State and Federal Proceedings*

In his direct appeal, Petitioner raised the following claims to the state court of appeals:

1. The admission of evidence that vouched for the complainant's credibility and veracity of her allegations denied Petitioner the right to a fair trial and right to a trial by jury under the Sixth and Fourteenth Amendments;
2. The trial court erred in barring Petitioner from introducing evidence of the complainant's mother's erratic lifestyle and CPS investigation; and
3. The trial court erred in granting the eight continuances Petitioner objected to without good cause, thus violating Petitioner's right to a speedy trial.

Dkt. 11-1, Ex. 4, at 47–48.

1       Following the state court of appeals' decision on direct appeal, Petitioner filed a petition

2   for discretionary review with the state supreme court raising the following grounds:

3       1.  Whether the admission of testimony and evidence which vouched for the
            credibility of the complaining witness and offered an opinion as to guilt violated
4           Petitioner's Sixth Amendment right to a jury trial and Fourteenth Amendment
            right to due process;
5       2.  Whether the trial court's ruling barring Petitioner from questioning the
            complainant's mother regarding her erratic lifestyle and parenting denied
6           Petitioner his Sixth Amendment rights to present a defense and to
            confrontation;
7       3.  Whether the prosecutor committed misconduct in violation of Petitioner's
            Fourteenth Amendment due process rights when she capitalized on the *in limine*
8           order barring Petitioner from eliciting evidence of the complainant's mother's
            erratic lifestyle and the CPS investigation of her parenting;
9       4.  Whether Petitioner was denied his Sixth Amendment right to a speedy trial
            when the trial court granted continuances over Petitioner's objection and
10          without a determination of good cause;
        5.  Whether the violation of Petitioner's right to a speedy arraignment, to which he
11          objected, requires reversal and dismissal of his conviction as a violation of his
            Sixth Amendment right to a speedy trial or, in the alternative, state law; and
12      6.  Whether trial counsel was ineffective for: (a) failing to object to the sufficiency
            of the charging document lacking a proper date for the crime, and (b) failing to
13          move for a mistrial when the victim testified that she came to court to put
            Petitioner in jail.
14
    Dkt. 11-1, Ex. 9, at 238–39.
15
        In his first PRP, Petitioner raised the following ground to the state court of appeals:
16
        1.  The failure to arraign Petitioner in a timely manner on the amended information
17          violated Petitioner's right to a speedy arraignment and trial.
18  Dkt. 11-1, Ex. 12, at 275, 277–83. In that filing, Petitioner also asserted an argument of

19  ineffective assistance of appellate counsel for failing to raise this issue on direct appeal. *Id*. at

20  283–85.

21      After the state court of appeals denied Petitioner's PRP, Petitioner did not seek

22  discretionary review with the state supreme court, but filed another PRP in March 2016 asserting

23  the following claim:

24

1.  Petitioner's sentence is unlawful based on an incorrect calculation of his offender score.

Dkt. 11-1, Ex. 17, at 398. The state court of appeals denied Petitioner's PRP as untimely and, in his petition for discretionary review filed with the state supreme court, he raised the same issue. Dkt. 11-1, Ex. 21, at 562. The state supreme court denied the petition. Dkt. 11-1, Exs. 21, 22.

In his January 2019 post-conviction motion, which was considered as another PRP by the state court of appeals, Petitioner asserted a claim challenging his conviction based on newly-discovered evidence of information contained in the summons to appear at his arraignment. Dkt. 11-1, Ex. 26. More specifically, it appears Petitioner claimed new evidence showing the victim's mother perjured herself when she stated she was not aware Petitioner was a registered sex offender when they lived together would have allowed Petitioner to present at trial evidence supporting his innocence defense. *See id*. at 621–28; *see also* Dkt. 11-1, Ex. 28, at 635. The state court of appeals denied this PRP as untimely also. Dkt. 11-1, Ex. 28.

Further, as set forth above, Petitioner submitted a number of post-conviction motions in 2021, which were consolidated by the state court of appeals. *See* Dkt. 11-1, Ex. 30, at 639–53; Dkt. 11-2, Ex. 31, at 1–37; Ex. 32, at 39-76; Ex. 33, at 78–79; Ex. 34, at 81–82; Ex. 35, at 84–140; Ex. 37, at 169–259. In his "amended PRP" filed in September 2021, Petitioner argued his offender score was incorrect for purposes of sentencing pursuant to *State v. Blake*. Dkt. 11-2, Ex. 35, at 84–140. In the remaining motions, as characterized by the state court of appeals, Petitioner argued newly discovered evidence that the investigation confused his records with those of his twin brother, Kenneth.[3] Dkt. 11-2, Ex. 38, at 260. In its February 7, 2022 decision, the court

---

[3] Petitioner also included a claim that his offender score was incorrect for purposes of sentencing; however, because the trial court corrected Petitioner's judgment and sentence pursuant to *State v. Blake* on October 18, 2021, the state court of appeals dismissed as moot that claim in the consolidated petition. *See* Dkt. 11-2, Ex. 38, at 260.

dismissed as moot the *Blake* claim based on Petitioner's October 18, 2021 resentencing, and found the remaining claims in the consolidated petition untimely. *Id*. at 261. In addition, the court found Petitioner had not demonstrated an exception to the one-year time limit for filing a PRP because: "The confusion between Dennis and Kenneth was known and addressed at trial by stipulation of the parties. The "new evidence" would not probably change the result of the trial, and is not material." *Id*.

After the state court of appeals denied Petitioner's consolidated PRP, Petitioner raised the following grounds for relief in his petition for discretionary review with the state supreme court:

1. Was Petitioner "late" in filing his petition, under RCW 10.73.090(1), when evidence was "recently" discovered, and this same evidence wasn't made known to Petitioner during the jury trial?
2. Did Petitioner demonstrate any of the elements listed in the *Stenson* test, under PRP of *Stenson*, 150 Wn.2d 207, 217; 76 P.3d 241, 2003?
3. Was Petitioner's Fourth Amendment rights violated when the State introduced "fabricated," and misleading evidence before the jury, in order to secure a conviction?
4. Was Petitioner's Sixth Amendment rights to "effective" counsel violated, by defense counsel's "deficient performance" and did this prejudice Petitioner?
5. Was Petitioner's Fourteenth Amendment rights to a "fair & impartial trial" violated, when the State knowingly elicited testimony from police detective Ms. Agurrie – concerning photos of Kenneth McDaniel – but instead the State "authenticated these same photos" as images of Petitioner?
6. Was "systematic racism" the cause of the actions of Court officers, and did these actions contribute in [sic] causing Petitioner to be convicted, and sentenced?
7. Associated with these above six issues, McDaniel's premise is that under RAP 13.4(b)(3), "a significant question of law," under the Constitution of the State of Washington is implicated, and needs to be answered by this honorable Court. That question is: "When a Petitioner – who is confined within a Washington prison facility – locates relevant "material" evidence, which wasn't previously known to Petitioner during trial, if this evidence is raised for the first time, does this create an "exception" to the time-bar, under RCW 10.73.100.1?

Dkt. 11-2, Ex. 39, at 269. Additionally, throughout his petition and in connection with these grounds, Petitioner asserted ineffective assistance of trial counsel. *Id*. at 270–83.

The deputy commissioner of the state supreme court denied the petition for review. Dkt. 11-2, Ex. 40. In his motion to modify that decision, Petitioner again argued the exception to the time bar for filing a PRP based on newly discovered evidence and ineffective assistance of counsel. Dkt. 11-2, Ex. 41. That motion was denied without comment. Dkt. 11-2, Ex. 42.

In the instant Petition, Petitioner raises the following three grounds for relief:

1. Petitioner's rights under the Fourth Amendment, Fourteenth Amendment, and Due Process were violated when the sex offender registration log erroneously showed Petitioner had a prior conviction for rape of a child, for which he registered as a sex offender;
2. Petitioner's rights were violated when the declaration for determination of probable cause used for his case erroneously included a prior conviction for rape of a child; and
3. Petitioner's Sixth Amendment right to effective assistance of counsel was violated when trial counsel: (1) failed to challenge the errors in the sex offender registration and declaration in support of probable cause, thereby abandoning the defense based upon identity, (2) failed to challenge the lack of a timely arraignment on the amended information, and (3) instructed the prosecutor on how to include the alternative charge of child molestation in the amended information.

Dkt. 5 at 5, 7, 8.

    *2. Grounds 1 – 3*

Petitioner has not properly exhausted his state court remedies as to all three grounds for relief in the federal Petition because he did not fairly present these claims to the state courts. Specifically, Petitioner did not present these claims in his direct appeal or in his original, timely, PRP. *See* Dkt. 11-1, Exs. 4, 9, 15. Instead, Petitioner tried to raise these claims in subsequent collateral challenges, as either motions or successive PRPs. Dkt. 11-1, 17, 26, 30; Dkt. 11-2, Exs. 31, 32, 35, 39. The state court of appeals denied these subsequent collateral challenges on procedural grounds because they were time barred or, in the alternative, impermissibly successive. Dkt. 11-1, Ex. 15, 20, 22, 28; Dkt. 11-2, Ex. 38, 40. As Petitioner did not raise the allegations contained in Grounds 1 – 3 during his direct appeal or at each level of his PRP, he did

1   not give the state court a full and fair opportunity to determine if a federal constitutional violation

2   occurred. *See Ortberg v. Moody*, 961 F.2d 135, 138 (9th Cir. 1992) (finding claims were

3   unexhausted when they were not raised on every level of direct review); *Casey v. Moore*, 386 F.3d

4   896, 916-18 (9th Cir. 2004) (finding claim was not fairly presented to the state court when the

5   claim was raised for the first and only time upon petitioning for discretionary review to the state

6   supreme court); *O'Haver v. Ruiz*, No. 3:15-cv-05797-RBL-JRC, 2016 WL 1019264, *4 (W.D.

7   Wash. Feb. 11, 2016) ("A petitioner must properly raise a habeas claim at every level of the state

8   courts' review."). Thus, Grounds 1 – 3 were not properly exhausted.

9           B.  Procedural Default

10          Procedural default is distinct from exhaustion in the habeas context. *Franklin v. Johnson*,

11  290 F.3d 1223, 1230 (9th Cir. 2002). The procedural default rule bars consideration of a federal

12  claim when it is clear the state court has been presented with the federal claim but declined to

13  reach the issue for procedural reasons or it is clear the state court would hold the claim

14  procedurally barred. *Id.* at 1230-31 (citations omitted). If a state procedural rule would now

15  preclude the petitioner from raising his claim at the state level, the claim is considered

16  "procedurally defaulted" and the federal courts are barred from reviewing the petition on the

17  merits. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *O'Sullivan*, 526 U.S. at 845.

18          All grounds raised in the Petition are procedurally defaulted because if Petitioner

19  attempted to present these claims in a subsequent PRP, the state court would find the claims

20  barred by Washington State law. Washington State imposes a one-year statute of limitations on

21  filing a PRP or other post-conviction challenges. RCW 10.73.090. The state court of appeals

22  issued a mandate finalizing Petitioner's direct appeal on November 20, 2013. Dkt. 11-1, Ex. 11.

23  Although Petitioner was resentenced on October 18, 2021, as Respondent correctly points out in

24

1    supplemental briefing, that amended sentence did not restart the clock on the state's one-year

2    statute of limitations for filing a post-conviction challenge.[4] *See* Dkt. 17 at 3 (citing *In re Adams*,

3    178 Wn.2d 417, 422–27, 309 P.3d 451 (Wash. 2013) (resentencing due to a corrected offender

4    score did not restart the limitations period for personal restraint petition claims challenging the

5    underlying conviction); *see also In re Sorenson*, 200 Wn. App. 692, 700–02, 403 P.3d 109

6    (Wash. Ct. App. 2017) (time limit started to run from date of mandate, not the date the court

7    entered an order correcting sentence)). Thus, the time to file a petition or motion for post-

8    conviction relief expired in November 2014, one year after Petitioner's direct appeal became

9    final. *See* RCW 10.73.090(1), (3)(b). As the one-year statute of limitations has passed, Petitioner

10   is barred from filing a subsequent PRP. *See id.* at (1); *see also Shumway v. Payne*, 223 F.3d 982,

11   988 n.22 (9th Cir. 2000) (RCW 10.73.090 has been found by the Ninth Circuit to be an

12   independent and adequate state law barring federal habeas review).

13         Further, under Washington State law, the state court of appeals will not consider a second

14   or successive PRP unless the petitioner certifies he has not filed a previous petition on similar

15   grounds and shows good cause as to why he did not raise the grounds in the previous PRP. *See*

16   RCW 10.73.140. Petitioner has not presented facts which could show good cause for his failure

17   to raise Grounds 1 – 3 at each level of his PRP. Therefore, all grounds raised in the Petition are

18   also subject to an implied procedural bar because the grounds would be "prohibited by an

19   independent, adequate, and mandatory rule of state procedure, RCW 10.73.140, making a return

20   to state court futile." *See Bolar v. Luna*, 2007 WL 1103933, at *11 (W.D. Wash. April 10, 2007).

21         Both the state court of appeals and the state supreme court also expressly declined to

22   consider Grounds 1 – 3 because they were presented in subsequent PRPs considered time barred

23   _____

24         [4] Petitioner did not file an appeal related to his resentencing. *See* Dkt. 11-2, Ex. 2.

REPORT AND RECOMMENDATION - 13

under a state statute, RCW 10.73.090(01). *See* Dkt. 11-2, Ex. 20, at 557–59; Dkt. 11-1, Ex. 22, at 606–07; Dkt. 11-1, Ex. 28, at 634–35; Dkt. 11-2, Ex. 38, at 260–62; Dkt. 11-2, Ex. 40, at 336–38. As the state court expressly denied Grounds 1 – 3 on an independent and adequate state procedural rule, these three grounds are barred from federal review. *See Williams v. Ryan*, 2019 WL 4750235, at *3 (D. Ariz. Sept. 30, 2019) (citing *Ylst v. Nunnemaker,* 501 U.S. 797, 801 (1991)) ("If a state court expressly applied a procedural bar, and that state procedural bar is both independent and adequate, a federal habeas court cannot review the claim on the merits.").

Petitioner would be precluded from asserting all the grounds raised in the Petition in the state court; therefore, the grounds raised in the Petition are procedurally defaulted in federal court. *See Coleman*, 501 U.S. at 731-32, 735 n.1; *Casey*, 386 F.3d at 920; *Eisermann v. Penarosa*, 33 F.Supp.2d 1269, 1274 (D. Haw. 1999) ("[I]f a petitioner has never raised his federal claim to the highest state court available and is now barred from doing so by a state procedural rule, exhaustion is satisfied because no state remedy remains available, but the petitioner has procedurally defaulted on his claim.").

C.  Overcoming Procedural Default

The procedural default will be excused and a petitioner will be entitled to federal habeas corpus review if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice[.]" *See Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998) (citing *Coleman*, 501 U.S. at 750); *see also Shinn v. Ramirez*, 142 S. Ct. 1718, 1733 (2022) ("Out of respect for finality, comity, and the orderly administration of justice, . . . federal courts may excuse procedural default only if a prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law.") (internal quotations and citations omitted). To establish "cause," a petitioner must show some objective factor external to

the defense prevented him from complying with the state's procedural rule. *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). To show "prejudice," a petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original); *see also Shinn*, 142 S. Ct. at 1733 (citations omitted).

Here, Petitioner fails to show some objective factor external to his defense prevented him from complying with the State's procedural bar rule. Petitioner also fails to carry his burden of establishing any alleged trial errors worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions, and thus has not shown prejudice.

### 1.   Martinez v. Ryan

Petitioner, however, asserts claims of ineffective assistance of counsel under *Martinez v. Ryan*, 566 U.S. 1 (2012) as an exception excusing the procedural default of Ground 3. Generally, Petitioner's, or his attorney's, ignorance or inadvertence cannot excuse procedural default. *Shinn*, 142 S. Ct. at 1733 (citing *Coleman*, 501 U.S. at 753). Moreover, "proceedings for which the Constitution does not guarantee the assistance of counsel at all, attorney error cannot provide cause to excuse a default." *Shinn*, 142 S. Ct. at 1733 (internal quotations omitted). There is, however, a limited exception where "ineffective assistance of state postconviction counsel may constitute 'cause' to forgive procedural default of a trial-ineffective-assistance claim, but only if the State requires prisoners to raise such claims for the first time during state collateral proceedings." *Id*. (citing *Martinez*, 566 U.S. at 9). The Supreme Court found this "narrow exception" also "applies if the State's judicial system effectively forecloses direct review of trial-ineffective-assistance claims." *Shinn*, 142 S. Ct. at 1733; *see Trevino v. Thaler*, 569 U.S. 413

1    (2013). "Otherwise, attorney error where there is no right to counsel remains insufficient to show

2    cause." *Shinn*, 142 S. Ct. at 1733 (citing *Martinez*, 566 U.S. at 16).

3    "[T]o establish 'cause' to overcome procedural default under *Martinez,* a petitioner must

4    show: (1) the underlying ineffective assistance of trial counsel claim is 'substantial'; (2) the

5    petitioner was not represented or had ineffective counsel during the [post-conviction relief

6    ("PCR")] proceeding; (3) the state PCR proceeding was the initial review proceeding; and (4)

7    state law required (or forced as a practical matter) the petitioner to bring the claim in the initial

8    review collateral proceeding." *Dickens v. Ryan,* 740 F.3d 1302, 1319 (9th Cir. 2014) (citing

9    *Trevino*, 569 U.S. at 423). Further, while *Martinez* previously had been interpreted to allow

10   federal courts to consider new evidence under *Martinez*, *Shinn* has now "greatly restrict[ed] the

11   circumstances in which a federal habeas court deciding *Martinez* claims may consider evidence

12   beyond that already contained in the state court record." *Creech v. Richardson*, 40 F.4th 1013,

13   1028 (9th Cir. 2022).

14   The Court begins by addressing the first prong, wherein the petitioner must show the

15   underlying ineffective assistance of trial counsel claim is "substantial," "which is to say that the

16   prisoner must demonstrate that the claim has some merit." *Martinez*, 566 U.S. at 14. "An

17   [ineffective assistance of counsel] claim has merit where (1) counsel's performance was

18   unreasonable under prevailing professional standards, and (2) there is a reasonable probability

19   that but for counsel's unprofessional errors, the result would have been different." *Cook v. Ryan,*

20   688 F.3d 598, 610 (9th Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 687–91, 694

21   (1984)). When considering the first prong of the *Strickland* test, judicial scrutiny must be highly

22   deferential. *Strickland*, 466 U.S. at 689. There is a strong presumption that counsel's

23   performance fell within the wide range of reasonably effective assistance. *Id*. The second prong

24   of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. *Id*.

1   The reviewing court need not address both components of the inquiry if an insufficient showing

2   is made on one component. *Id*. at 697. As to the inquiry under *Martinez*, "substantiality" requires

3   a petitioner to demonstrate that "reasonable jurists could debate whether (or, for that matter,

4   agree that) the petition should have been resolved in a different manner or that the issues

5   presented were adequate to deserve encouragement to proceed further." *Detrich v. Ryan,* 740

6   F.3d 1237, 1245 (9th Cir. 2013) (internal citation omitted).

7        Petitioner asserts three claims of ineffective assistance of counsel in Ground 3. First, he

8   alleges trial counsel was ineffective for not challenging whether Petitioner had a prior conviction

9   for rape of a child. However, the record shows, prior to trial, counsel challenged the admissibility

10   of that evidence and, after hearing extensive argument, the court excluded it. *See* Dkt. 11-2, Ex.

11   48, at 438–47 (Verbatim Report of Proceedings ("VRP"), Pierce County Cause No. 09-1-05629-

12   5 (Jan. 13 & 19, 2011)); Ex. 49, at 487–90 (VRP (Jan. 20, 2011)). In light of counsel's challenge

13   as well as the trial court's ruling, Petitioner fails to show counsel's performance here was

14   unreasonable.

15        Second, Petitioner alleges trial counsel was ineffective for failing to challenge the lack of

16   a timely arraignment on the amended information. However, the record shows counsel did raise

17   this issue before the trial court in order to preserve the issue for appeal. Dkt. 11-2, Ex. 50, at

18   674–79 (VRP (Jan. 25, 2011)). As to the issue of the arraignment itself, counsel stated,

19   "[T]here's no actual prejudice to me regarding preparation for this trial. I do, I think, for the

20   record would need to object to an arraignment which is not timely. . . . [F]or the record and for

21   purposes of appeal should Mr. McDaniel be convicted, I know he wishes me to object to the fact

22   that he wasn't arraigned . . . on this amended information." *Id*. at 677–78. On direct appeal, the

23

24

1  state court of appeals concluded Petitioner was not prejudiced by the lack of a timely

2  arraignment:

> As noted, the charge of child molestation was added to the information on June 15, 2010. McDaniel, though, was not arraigned on it until January 25, 2011, over seven months later, well beyond the 14-day period set in CrR 4.1. The record discloses no reason for this delay.
>
> The absence of arraignment by itself, however, is not a due process violation. *State v. Anderson*, 12 Wn. App. 171, 173, 528 P.2d 1003 (1974). Rather, harm occurs when the absence of arraignment deprives the accused and counsel of sufficient notice and adequate opportunity to defend. *Garland v. Washington*, 232 U.S. 642, 645, 34 S. Ct. 456, 58 L.Ed. 772 (1914). An information may be amended without re-arraignment if the defendant's substantial rights are not prejudiced. *State v. Allyn*, 40 Wn. App. 27, 35, 696 P.2d 45 (1985). The defendant bears the burden of showing prejudice. *State v. Royster*, 43 Wn. App. 613, 619-20, 719 P.2d 149 (1986).
>
> McDaniel's counsel told the court that he had received a copy of the amended information in June 2010, that he had made his client aware of the amended charges that month, and that he was well aware the State was proceeding on both counts. No evidence was offered of any harm or prejudice to McDaniel from the late re-arraignment. Under the cases above, the late arraignment, although regrettable, does not constitute error requiring reversal.

13  Dkt. 11-1, Ex. 3, at 41. Petitioner did not claim ineffective assistance of counsel related to this

14  issue in his appeal to the state supreme court. *See* Dkt. 11-1, Ex. 9, at 254–55. Further, in light of

15  the evidence on record showing counsel did object to the timing of the arraignment and

16  preserved that issue for appeal, Petitioner fails to show counsel's performance was unreasonable.

17  And third, Petitioner alleges trial counsel was ineffective for instructing the prosecutor on

18  how to include the alternative charge of child molestation in the amended information. In

19  response to this allegation, Respondent asserts Petitioner has not demonstrated defense counsel

20  instructed the prosecutor how to amend the information, or shown the prosecutor would not have

21  amended the information without defense counsel's alleged assistance. *See* Dkt. 10 at 18. The

22  Court agrees. Petitioner's conclusory allegation here does not show counsel's performance was

23  unreasonable.

24

1    As set forth above, Petitioner has failed to establish deficient performance by trial

2   counsel with respect to all three issues in Ground 3. As a result, the Court finds there is no

3   "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

4   would have been different." *Strickland*, 466 U.S. at 694. Notably, "[t]he likelihood of a different

5   result must be substantial, not just conceivable." *Apelt v. Ryan*, 878 F.3d 800, 832 (9th Cir. 2017)

6   (quoting *Richter*, 562 U.S. at 112). And here, Petitioner has not made that showing. Because he

7   cannot show the existence of a substantial claim of ineffectiveness, Petitioner has not met the

8   first prong under the *Martinez* analysis and has failed to establish cause to overcome procedural

9   default of his ineffectiveness claims in Ground 3 of the Petition.

10                    *2.  Actual Innocence*

11    Additionally, Petitioner asserts he has overcome the procedural bar because he is actually

12   innocent. Dkt. 15. Only in an "extraordinary case" may the habeas court grant the writ without a

13   showing of cause and prejudice to correct a "fundamental miscarriage of justice" where a

14   constitutional violation has resulted in the conviction of a defendant who is actually innocent.

15   *Murray*, 477 U.S. at 495–96. This exception "applies to a severely confined category" of cases,

16   namely those in which the petitioner "persuades the district court that, in light of the new

17   evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable

18   doubt." *McQuiggin v. Perkins*, 569 U.S. 383, 386, 395 (quoting *Schlup v. Delo*, 513 U.S. 298,

19   329 (1995)); *see also House v. Bell*, 547 U.S. 518, 537 (2006). "[T]he miscarriage of justice

20   exception is concerned with actual as compared to legal innocence." *Calderon v. Thompson*, 523

21   U.S. 538, 559 (1998) (citation omitted).

22    The problem here for Petitioner's claim of a fundamental miscarriage of justice to

23   overcome procedural default is he has failed to submit new, reliable evidence showing he is

24   actually innocent of his current conviction. Instead, Petitioner rehashes the arguments and

"newly discovered evidence" he presented to the state courts to exempt him from the time limits for filing subsequent post-conviction motions and PRPs. *See* Dkt. 15. In its latest ruling denying review of Petitioner's untimely fourth PRP, the state supreme court noted the following with respect to that evidence:

> Mr. McDaniel asserts that the newly discovered evidence consists of the declaration of probable cause in his case, which, though it names him in the body of the document, names his brother Kenneth McDaniel in the title of the case. Plainly, this document was available before trial and therefore cannot be "newly discovered." It is also immaterial. A mix-up of the identities of Mr. McDaniel and [h]is brother came up at trial when one of the exhibits presented at trial—a photograph purportedly of Mr. McDaniel—was actually a photograph of Kenneth McDaniel. The parties addressed the matter by stipulating that the defendant in court was Mr. McDaniel, that the photograph in the exhibit was of Kenneth McDaniel, and that Kenneth McDaniel had no access to the alleged victim during the time period the State alleged the crime occurred. Thus, any mix-up over the identities of Mr. McDaniel and his brother was dealt with at trial and had no effect on the outcome. Nothing in these materials shows that the State used "false evidence" to obtain a warrant or to convict Mr. McDaniel, as he claims. Mr. McDaniel submits other records, such as Department of Corrections records, that purportedly document other instances in which he has been confused with his brother, but he does not show that any of these records are material to his trial or support his claim that his conviction resulted from systemic racism.

Dkt. 11-2, Ex. 40, at 337.[5]

By merely reiterating his claims made in state court regarding the information provided in the sex offender registration log and declaration in support of probable cause that related to his brother Kenneth rather than himself, a misunderstanding that was resolved prior to trial, Petitioner makes no colorable showing of actual innocence to overcome the procedural default

---

[5] In his Traverse, Petitioner takes issue with this reasoning from the state supreme court, particularly with respect to its finding that the mix-up of identities was resolved prior to trial and therefore not material to his claims relating to erroneous information in the sex offender registration and declaration of probable cause. *See* Dkt. 15 at 22–24. Specifically, Petitioner claims he can overcome the procedural bar because his trial counsel did not inform him of this "manifestly fraudulent information" prior to trial and, if he had, there would have been no trial at all due to the errors in those documents. *Id.* While the Court does understand Petitioner's concerns regarding the information in those documents, again, there is nothing in the record to show that the misunderstanding was not resolved prior to trial or affected the outcome of the trial. And, for purposes of demonstrating an exception to procedural default, Petitioner's argument does not constitute new, reliable evidence showing he is actually innocent in this case.

bar. In sum, the Court finds Petitioner has not submitted new, reliable evidence showing he is actually innocent of the current conviction and that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt. Petitioner has not shown he overcomes the procedural bar.

### D. Conclusion

The Court finds Petitioner has not exhausted Grounds 1 – 3 and the grounds are procedurally defaulted. As Petitioner has not overcome the procedural default, the Court recommends the Petition be dismissed.

### III. Evidentiary Hearing

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). A hearing is not required if the allegations would not entitle Petitioner to relief under § 2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* Further, the Supreme Court in *Shinn* held that when reviewing a federal habeas petition under 28 U.S.C. § 2254, the federal court may not consider any facts beyond the factual record presented to the state post-conviction relief court – unless one of the limited exceptions of 28 U.S.C. § 2254(e)(2) applies. *Shinn v. Ramirez*, 142 S. Ct. 1718, 1734 (2022).

1    The Court finds it is not necessary to hold an evidentiary hearing in this case because, as

2    discussed in this Report and Recommendation, Petitioner's grounds may be resolved on the

3    existing state court record.

4    **IV.    Certificate of Appealability**

5    A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

6    court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

7    (COA) from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability

8    may issue . . . only if the [petitioner] has made a substantial showing of the denial of a

9    constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating

10   that jurists of reason could disagree with the district court's resolution of his constitutional

11   claims or that jurists could conclude the issues presented are adequate to deserve encouragement

12   to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*,

13   529 U.S. 473, 484 (2000)).

14   No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or

15   would conclude the issues presented in the Petition should proceed further. Therefore, the Court

16   concludes Petitioner is not entitled to a certificate of appealability with respect to this Petition.

17   **V.    Conclusion**

18   For the above stated reasons, the Court concludes Petitioner's grounds for relief are

19   procedurally barred. The Court finds an evidentiary hearing is not necessary. The Court

20   recommends the Petition (Dkt. 5) be dismissed with prejudice. The Court also recommends a

21   certificate of appealability not issue.

22   Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties

23   shall have fourteen (14) days from service of this report to file written objections. *See also* Fed.

24

R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on May 26, 2023, as noted in the caption.

Dated this 5th day of May, 2023.

David W. Christel
Chief United States Magistrate Judge